**Clyde M. FARRIS, Plaintiff-Appellant,**

v.

**DELTA AIR LINES, INC., Defendant-Appellee.**

**No. 31105.**

United States Court of Appeals, Fifth Circuit.

March 7, 1972.

Rehearing and Rehearing En Banc Denied April 21, 1972.

H. Alva Brumfield, New Orleans, La., Brumfield & Brumfield, Sylvia Roberts, Baton Rouge, La., for plaintiff-appellant.

A. R. Christovich, Christovich & Kearney, New Orleans, La., for Delta Air Lines, Inc., defendant-appellee.

Before JONES, BELL and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Plaintiff, a guest in a motel near New Orleans International Airport, was injured when a Delta DC-8 jet aircraft crashed into the motel while on a training landing approach. He sued Delta and its insurer, charging negligence. The jury verdict was for defendants, and plaintiff appeals.

All persons aboard the aircraft, consisting of crew members and a Federal Aviation Administration inspector, were killed in the crash. To make out his direct case plaintiff relied upon the expert testimony of Captain Kepner, a pilot employed by another major air line. Kepner's testimony was the key to plaintiff's case. We reverse for errors occurring in his cross-examination.

In that examination, the defense pursued a line of inquiry which it stated was for the purpose of impeachment. Its efforts in this direction consisted of attempts to prove several incidents that had taken place in Kepner's flying career of many years, all unrelated to the accident in suit and to each other.[1]

The defense subpoenaed from Kepner's employer the personnel file maintained on him.[2] The first document brought out from the file was what purported to be an unsigned carbon copy of a letter to Kepner from his chief pilot reducing him to copilot for approaching Newark, New Jersey, airport at too low an altitude in 1952. Kepner denied ever receiving or seeing such a letter and denied having ever been reduced to copilot. Neither the personnel file nor the particular carbon copy was ever authenticated in any manner, nonetheless the defense was permitted, over general and special objection, to use the contents of the letter as part of its "impeachment" of Kepner. Lacking authentication, the letter was inadmissible for any purpose. The prejudicial effect is plain—it tended to show that the incident occurred; that it was serious enough to require strong action by the employer, whereas Kepner considered it not of major consequence; and that Kepner had falsely testified when he denied being reduced in rank because of the incident.

From the same file, the defense was allowed to use another carbon copy —this time authenticated by Kepner—in which the chief pilot of his employer called on Kepner to explain why he had committed four alleged infractions of procedure in handling of a plane on the ground at an identified time and place. The first part of the letter quoted a letter from a station agent complaining of

---

1. The trial court ruled that the defense waived its right to cross-examine Kepner on his qualifications as an expert because it failed to exercise that right when the witness was tendered, and the court then had accepted the witness as an expert. Blocked in presenting its material as bearing on Kepner's qualifications, the defense shifted its ground to offer it as "impeachment" of his past experiences, his judgment, and his capabilities, for the purpose, as the defense phrased it, of showing that he was a reckless pilot rather than a careful pilot on whose expertise one could rely.

We need not decide whether it was error to allow the line of inquiry, which resulted in placing before the jury the same evidence which the court had said it would not permit.

2. The defense's characterization of its inquiry as impeachment spilled over into another dubious point concerning this file. The plaintiff objected to use of it on the ground it had not been listed on the pretrial order as required by the practice of the court. The explanation of the defense was that the material was solely for impeachment purposes and thus was not required to be listed.

the alleged mishandling of the plane. The court ruled this portion inadmissible as hearsay but allowed to be read to the jury the second part of the letter, in which the chief pilot called on Kepner to explain why he committed the same alleged incidents. This did not remove the objectionable nature. The chief pilot's letter was not being offered to show the fact of a demand by the chief pilot for an explanation but for the purpose of proof that the incidents described by the station agent had in fact occurred.

 Finally, when the last-mentioned letter was offered, plaintiff made an objection, in routine language which justified no reply in kind. Defense counsel responded:

> Well, if the Court please, this all has to be put in on the basis that Captain Kepner has elected to attack two dead men [the pilot and copilot] who can't defend themselves.

This remark drew a strong reprimand from the court to defense counsel, and an instruction to the jury to disregard it, followed by (with permission of the court) an indignant statement from the witness. Considering the vital necessity of Kepner's opinion to plaintiff's case, and the error already described in the use of the two letters, we are not able to say that the effect of this further blow by an egregiously improper remark was not prejudicial, although the court attempted to cure it.

Reversed and remanded.

JONES, Circuit Judge (dissenting):

To the extent that errors were committed they were cured by the district court or were not prejudicial, or both. The case was one for the jury and the jury has decided it. I think this Court should affirm the judgment based upon the verdict.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.